United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 07, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-34238** |
| **PROVIDENCE HOSPITAL OF NORTH** | § | |
| **HOUSTON LLC,** | § | **CHAPTER 7** |
| | § | |
| Debtor. | § | |
| | § | |
| **ALLISON D. BYMAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 22-3330** |
| | § | |
| **RRL CAPITAL INVESTMENTS, LLC,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is a single matter self-styled as, "Plaintiff Allison D. Byman,

Chapter 7 Trustee's Motion for Summary Judgment" filed by Allison D. Byman, Chapter 7

Trustee, on July 27, 2023. RRL Capital Investments, LLC filed no response to "Plaintiff Allison

D. Byman, Chapter 7 Trustee's Motion for Summary Judgment" Without need of a hearing, and

for all the reasons discussed *infra*, Trustee's motion for summary judgment is granted in part and

denied in part.

### I.     BACKGROUND & UNDISPUTED FACTS

#### A.  Procedural History

1. On August 22, 2020, Providence Hospital of North Houston, LLC ("*Debtor*") filed for
   relief under Chapter 7 of the United States Bankruptcy Code.[1]

2. On August 26, 2020, Allison D. Byman ("*Trustee*" or "*Plaintiff*") was appointed to serve
   as the Chapter 7 Trustee and continues to serve in that capacity.[2]

---

[1] Citations to Debtor's Bankruptcy case, 20-34238, shall take the form "Bankr. ECF No. —." Bankr. ECF No. 1.
[2] Case No. 20-34238 at August 26, 2020 (notice of appointment of successor trustee).

3. On December 1, 2022, Trustee filed her complaint ("*Complaint*") initiating this adversary proceeding asserting two causes of action against RRL Capital Investments, LLC ("*RRL*" or "*Defendant*"), to wit: declaratory judgment pursuant to 28 U.S.C. § 2201 and a willful stay violation pursuant to 11 U.S.C. § 362(k).[3]

4. On January 3, 2023, Defendant appeared and filed an answer ("*Answer*") to the Complaint.[4]

5. On February 6, 2023, the Court entered its "Comprehensive Scheduling, Pre-Trial & Trial Order" ("*Scheduling Order*").

6. On March 6, 2023, both the Trustee and Defendant filed their Notice of Consent to the entry of final orders by this Court.[5]

7. On July 27, 2023, Trustee filed her, "Plaintiff Allison D. Byman, Chapter 7 Trustee's Motion for Summary Judgment"[6] ("*Trustee's MSJ*").

8. Defendant did not file a response to Trustee's MSJ.

## B. Undisputed Facts

The Fifth Circuit has provided that, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed."[7] Here, Defendant filed no response to Trustee's MSJ. As such, the Court will accept as undisputed the material facts asserted in Trustee's MSJ.[8]

1. January 4, 2021 was the deadline to file proofs of claim in Debtor's Bankruptcy Case.[9]

2. Neither Independent Bank ("*Bank*") nor Defendant has filed a claim in the Bankruptcy Case.[10]

3. On May 16, 2022, RRL filed its Notice of Perfected Security Interest in Debtor's Personal Property (the "*Notice*") in the Bankruptcy Case and thereby asserted that RRL (i) acquired the Bank's interest in the Loans (defined below), (ii) held an interest in the Debtor's cash

---

[3] ECF No. 1.
[4] ECF No. 5.
[5] ECF Nos. 17 & 18.
[6] ECF No. 19.
[7] *Flowers v. Deutsche Bank Nat. Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir.1988)).
[8] ECF No. 19.
[9] Bankr. ECF No. 38.
[10] *See* Case No. 20-34238 Claims Register.

collateral, (iii) did not consent to the continued use of the Debtor's cash collateral, and (vi) held a security interest in Debtor's personal property.[11]

4.  On April 28, 2023, the Trustee served Defendant with her First Set of Requests for Production, Interrogatories, and Requests for Admission to Defendant RRL Capital Investments, LLC ("*Discovery Requests*").[12]

5.  Defendant failed to respond to the Discovery Requests on or before April 29, 2023 and has not responded to date.[13]

6.  On or about November 20, 2015, the Debtor entered into a Promissory Note, Deed of Trust, Security Agreement, and Letter Loan Agreement, bearing Account No. XXX0541 (collectively, the "*First Loan*") with the Bank pursuant to which the Bank provided financing to the Debtor in the total amount of $6,673,000.00.[14]

7.  The First Loan provides that the laws of Texas govern the interpretation, performance, and enforcement of the security agreement.[15]

8.  On December 1, 2015, the Bank filed a UCC-1 Financing Statement, File No. 15-0037788594, related to the First Loan, with the Texas Secretary of State's office (the "*First Loan UCC-1*").[16]

9.  On or about June 23, 2016, the Debtor entered into a Revolving Working Capital Note, Deed of Trust, Security Agreement, Letter Loan Agreement, and Collateral Assignment of Rents and Leases, bearing Account No. XXX4023 (collectively, the "*Second Loan*" and together with the First Loan, the "*Loans*") with the Bank pursuant to which the Bank provided financing to the Debtor in the total amount of $2,800,000.00.[17]

10. Pursuant to the First Loan and the Second Loan, Debtor pledged certain assets of the Debtor as collateral, including: all accounts receivable, furniture, fixtures, equipment, inventory, chattel paper, general intangibles, and other articles of personal property now owned or hereafter acquired by Providence Hospital of North Houston LLC ("*Security Interest*").

11. The Second Loan provides that the laws of Texas govern the interpretation, performance, and enforcement of the security agreement.[18]

---

[11] Bankr. ECF No. 76.
[12] ECF No. 19.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*

12. On June 30, 2016, the Bank filed a UCC-1 Financing Statement, File No. 16- 0021670457, related to the Second Loan, with the Texas Secretary of State's office (the "*Second Loan UCC-1*").[19]

13. On September 4, 2020, the Bank filed a continuation statement of the First Loan UCC-1 with the Texas Secretary of State's office (the "*Continuation Statement*").[20]

14. On October 29, 2020, the Loans were paid off in full when Defendant made payment in the aggregate amount of $4,167,274.16 to the Bank on account of the total outstanding balance due under the Loans.[21]

15. To fund the payoff of the Loans, Doctors Hospital 1997 LP d/b/a United Memorial Medical Center ("*UMMC*")—a defendant in another adversary proceeding pending before this Court, styled as: *Allison D. Byman, Chapter 7 Trustee v. Doctors Hospital 1997 LP d/b/a United Memorial Medical Center*, Adv. Pro. No. 21-03426 (the "*UMMC Adversary Proceeding*")— entered into a Promissory Note dated October 20, 2020 with Ravishanker Mallapuram ("*Mallapuram*") and Syed Mohiuddin ("*Mohiuddin*") whereby Mallapuram and Mohiuddin borrowed a total of $5,400,000.00 from UMMC (the "*UMMC Note*").[22]

16. On December 17, 2020, the Bank terminated its Second Loan UCC-1 by filing a termination statement with the Texas Secretary of State's office (the "*Second Loan Termination Statement*").[23]

17. The Bank has not filed a financing statement amendment terminating or assigning the Bank's interest with respect to the First Loan.[24]

18. At no time prior to or after the filing of the Second Loan Termination Statement was a financing statement amendment filed evidencing the alleged assignment of the Bank's interest with respect to Second Loan.

19. On April 15, 2022, the Bank executed an Assignment of Note and Liens (the "*First Loan Assignment*") whereby the Bank purportedly transferred and assigned its remaining interest, if any, in the First Loan to Defendant.

20. Also on April 15, 2022, the Bank executed an Assignment of Note and Liens (the "*Second Loan Assignment*" and together with the First Loan Assignment, the "*Assignments*") whereby the Bank purportedly transferred and assigned its remaining interest, if any, in the Second Loan to Defendant.[25]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

21. The Assignments also indicate that the Loans were paid in full.[26]

22. The Assignments were executed "effective April 15, 2022."[27]

23. The Bank and Defendant executed no other written documents—other than the Assignments executed on April 15, 2022—explaining that Assignments were to be interpreted as to assign and transfer the Loans prior to the underlying indebtedness being paid in full by Defendant.[28]

24. On March 28, 2022, counsel for Defendant sent a cease-and-desist letter (the "*Letter*") to the Trustee in advance of the depositions and mediation scheduled in the UMMC Adversary Proceeding demanding that Trustee cease and desist all actions in the UMMC Adversary Proceeding pending the enforcement of Defendant's rights as secured creditor holding a first lien.[29]

25. Subsequent to sending the Letter, Defendant has taken no action to enforce its purported lien rights in the Bankruptcy Case with the exception of filing the Notice.[30]

26. Defendant has no expectation that the Loans will be repaid by the Debtor or its estate and is not seeking repayment from the Debtor.[31]

## II.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334(b), which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11."[32] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[33]

"Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[34] "Arising in" jurisdiction refers to proceedings that are not based on any provision of the Bankruptcy Code, but nonetheless "would have no existence outside

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] 28 U.S.C. § 1334(b).
[33] 28 U.S.C. § 157(a). *See also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[34] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner*, 430 F.3d 260, 267 (5th Cir. 2005).

of the bankruptcy."[35] Taken together, proceedings that are "arising under" or "arising in" bankruptcy comprise this Court's core jurisdiction.[36] This Court may also exercise jurisdiction over proceedings that "relate to" a case under the Bankruptcy Code.[37] A proceeding is "related to" a case under the Bankruptcy Code "when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[38] In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[39]

Here, this Adversary Proceeding concerns determining the validity, priority, and extent of Defendant's secured status and whether Defendant committed a willful stay violation pursuant to 11 U.S.C. § 362(k).[40] Both of these causes of action invoke substantive rights provided by the Bankruptcy Code. Thus, this Court has core jurisdiction over this proceeding. Alternatively, determining the validity, priority, and extent of Defendant's lien in Debtor's assets, and whether Defendant committed a stay violation, will undoubtedly have a conceivable effect on the administration of Debtor's Bankruptcy Case.[41] Thus, this Court also has related to jurisdiction over this proceeding.

This Court may only hear a case in which venue is proper.[42] Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be

---

[35] *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

[36] *Id.*

[37] 11 U.S.C. § 157(c)(1); 28 U.S.C. § 1334(b).

[38] *Walker v. Cadle Co.*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).

[39] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)). *See also, e.g., Edge Petroleum Operating Co. v. GPR Holdings, L.L.C.*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").

[40] ECF No. 1.

[41] *Walker v. Cadle Co.*, 51 F.3d 562, 569 (5th Cir. 1995).

[42] 28 U.S.C. § 1408.

commenced in the district court in which such case is pending." Debtor's bankruptcy case is pending in this Court, and thus venue is proper in this case.[43]

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[44] The pending dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). Furthermore, all parties have expressly consented to the entry of final orders by this Court.[45] Thus, this Court wields the constitutional authority to enter a final order here. However, should the Honorable United States District Court determine that the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests that the Honorable United States District Court convert this Memorandum Opinion into a Report and Recommendation.

### III.   ANALYSIS

#### A.  Rule 56 Standard

Federal Rule of Civil Procedure ("*Rule*") 56 permits a party to move for summary judgment, "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[46] Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7056 incorporates Rule 56 in adversary proceedings. Rule 56 states that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[43] Case No. 20-34238.
[44] *See* 28 U.S.C. §§ 157(b)(1), (c)(1). *See also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).
[45] ECF Nos. 17, 18.
[46] FED. R. CIV. P. 56(a) (emphasis added).
[47] *Id.*

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[48]

Courts employing this standard of review must determine "not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon evidence before the court."[49] To prevail on summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law.[50] A material fact is one "that might affect the outcome of the suit under the governing law."[51]  A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving parties.[52]

Rule 56 creates a shifting burden. Once a properly supported motion for summary judgment is presented, "the nonmoving party must rebut with 'significant probative' evidence."[53] If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.[54] When there is no genuine issue for trial, the Court should grant summary judgment.[55] In determining whether summary judgment is appropriate, a court is not to weigh evidence, assess its probative value, or resolve factual disputes,[56] but the facts must be reviewed with all "justifiable inferences" drawn in non-movants' favor.[57] Nevertheless, factual controversies will be resolved in non-movants' favor "only when there is an actual

---

[48] FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).
[49] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).
[50] *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).
[51] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998).
[52] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).
[53] *Ferguson v. Nat. Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted).
[54] *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007).
[55] *Id.*
[56] *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).
[57] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998).

controversy—that is, when both parties have submitted evidence of contradictory facts."[58] If, however, the record could not lead a rational trier of fact to find for non-movants, summary judgment is appropriate.[59] While the Court may consider other materials in the record, it need only consider those actually cited.[60] Where the facts are undisputed and only questions of law exist, a court must apply the appropriate law to the facts to determine whether the moving party is entitled to judgment as a matter of law.[61]

The Court will now consider Trustee's MSJ.

## B. Trustee's MSJ

Trustee seeks summary judgment on: (1) the declaratory judgment action brought against Defendant to determine the validity, priority, and extent of Defendant's secured status in Debtor's assets pursuant to 28 U.S.C. § 2201, and (2) that Defendant committed willful stay violations pursuant to 11 U.S.C. § 362(k).[62] The Court will consider each in turn.

### 1. Declaratory Judgment Pursuant to 28 U.S.C. § 2201

Pursuant to 28 U.S.C. § 2201, Trustee seeks entry of a judgment declaring that: (a) Defendant's purported security interest in the assets of the estate to be invalid, (b) that neither the estate nor the Debtor owe any amount to the Bank or Defendant, and (c) that Defendant holds no valid claim against the Debtor or the estate.[63]

The Declaratory Judgment Act ("*DJA*"), 28 U.S.C. § 2201(a), provides, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an

---

[58] *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir.1996).

[59] *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (1986).

[60] *Id.* (citing FED. R. CIV. P. 56(c)(3)).

[61] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) ("Summary judgment is appropriate where only issue before court is pure question of law."); *see Barnes v. Allstate Ins. Co.*, 2014 U.S. Dist. LEXIS 51218, 2014 WL 1457696, at *1 (E.D. La. Apr. 14, 2014) ("Because the facts are undisputed and this motion presents only a question of law, resolution on summary judgment is appropriate.").

[62] ECF No. 19.

[63] *Id.* at 16, ¶ 60.

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." For a declaratory judgment action to survive, a justiciable substantive claim must exist.[64] To have standing under the DJA, the plaintiff may show that "actual present harm or a significant possibility of future harm" exist "even though the injury-in-fact has not yet been completed."[65] Courts wield great discretion in determining whether to entertain an action under the DJA.[66]

The Court will consider each of Trustee's DJA requests in turn.

**a.   Whether Defendant's security interest in Debtor's assets is invalid**

Trustee contends that she is entitled to a declaratory judgment that Defendant's Security Interest is invalid under Texas law because the Loans underlying the Security Interest were already satisfied in full prior to the Assignments being executed.[67]

As a preliminary matter, the Court notes that Trustee devotes very little discussion articulating the actual or significant possibility of future harm necessary to show standing under the DJA with respect to Defendant's Notice and the Assignments. Trustee merely asserts, "[i]n all likelihood, the Assignments were made at the request of RRL after the Loans had been paid in full as a means to exert pressure on the Trustee to resolve the UMMC Adversary Proceeding favorably for UMMC, an entity sharing common ownership with RRL and Medical Village."[68] Assumptions regarding Defendant's motivations/state of mind are not summary judgment evidence.

None the less, because it is uncontroverted that Defendant's Notice sought to prevent Trustee from using cash collateral, and since Defendant continues to reserve the right to object to

---

[64] *Williams v. Farris*, Nos. 19-32784, 19-3683, 2021 WL 1289672 (Bankr. S.D. Tex. 2021).
[65] *Bauer v. Texas*, 341 F.3 352, 357-58 (5th Cir. 2003).
[66] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).
[67] ECF No. 19 at 13-16.
[68] *Id.* at 15-16.

Trustee's use of cash collateral because of the Assignments,[69] the Court finds that while no actual controversy currently exists, that there is a significant possibility of future harm. Thus, the Court concludes that Trustee has standing under the DJA.

Texas law provides that upon the satisfaction of the underlying debt, the lien securing the debt is extinguished without further action of the prior lien holder.[70] Here, the only material fact necessary for the Court to determine this issue is undisputed: the Loans that underlie Defendant's Security Interest were paid in full on October 29, 2020.[71] Thus, as a matter of Texas law, because the Loans underlying Defendant's Security Interest were paid in full on October 29, 2020,[72] the Security Interest was also extinguished as a matter of law on October 29, 2020.[73] Thus, the purported assignment of the Security Interest by the Bank to Defendant on May 16, 2022,[74] was invalid and had no effect or force.

Accordingly, Defendant's asserted Security Interest in Debtor's assets[75] is invalid and has no effect or force.

### b.  Whether the Debtor or estate owes any amount to the Bank or Defendant

Trustee next seeks a determination, "that neither the Estate nor the Debtor owe any amount to the Bank or [Defendant]."[76] There are, however, numerous issues with Trustee's second request for summary judgment.

---

[69] *See* Bankr. ECF Nos. 76 & 103 at 4, ¶14.

[70] *See Barr v. White Oak State Bank*, 677 S.W.2d 707, 710 (Tex. App.—Tyler 1984) (stating that "the Bank no longer held a security interest in the collateral once the underlying debt incurred . . . had been paid in full . . . [Debtor's] note was marked paid by the Bank . . . therefore, the Bank's security interest terminated because of the satisfaction of the debt which it was created to secure"); *see also Endeavor Energy Res., L.P. v. Staley*, 569 S.W.3d 319, 328 (Tex. App.—El Paso 2019) (stating that "Texas law provides that satisfaction of a debt automatically extinguishes a lien securing the debt"); *Am. First Nat'l Bank v. Jordan-Lewis Dev., L.P.*, No. 01-09-0099-cv, 2011 WL 2732779, at *5 (Tex. App.—Houston 2011).

[71] ECF No. 19 at 8, ¶ 28.

[72] *Id.*

[73] *See Barr v. White Oak State Bank*, 677 S.W.2d 707, 710 (Tex. App.—Tyler 1984).

[74] Bankr. ECF No. 76.

[75] *Id.*

[76] ECF No. 19 at 16.

First, the Bank is not a party to this adversary proceeding and has had no notice or opportunity to be heard with respect to whether the Debtor owes any amount to the Bank. This Court cannot declare the rights of a party that is not before it.

Second, the Trustee is seeking entry of a declaratory judgment that well exceeds the scope of the Assignments that are the primary subject of this proceeding. Trustee seeks entry of judgment that the Debtor does not "owe any amount to the Bank or [Defendant]."[77] The summary judgment evidence presented before the Court is insufficient to render such a broad judgment that, by its terms, could potentially extinguish claims that go well beyond the scope of the issues litigated in this case.

Last, as discussed, in order to bring a claim pursuant to 28 U.S.C. § 2201 the Trustee must demonstrate that there is an actual controversy for this Court to resolve.[78] Because neither the Bank nor Defendant has filed a claim or otherwise asserted that any amount is due from the Debtor,[79] the Court finds that there is no actual controversy to resolve.

Accordingly, Trustee's request for summary judgment that "that neither the Estate nor the Debtor owe any amount to the Bank or [Defendant]"[80] is denied.

### c.   Whether Defendant holds a valid claim against the Debtor or estate

Trustee next requests a declaration that "[Defendant] holds no valid claim against the Debtor or the Estate."[81] For the same reasons discussed *supra*, and because Defendant has not asserted a claim against the estate,[82] the Court similarly finds that there is no actual controversy with respect to this request either.

---

[77] ECF No. 19 at 16, ¶ 60.
[78] *Bauer*, 341 F.3d at 357-58.
[79] ECF No. 19 at 8, ¶ 26. *See also* Case No. 20-34238 Claims Register.
[80] ECF No. 19 at 16.
[81] ECF No. 19 at 16, ¶ 60.
[82] *Id.* at 8, ¶ 26. *See also* Case No. 20-34238 Claims Register.

Accordingly, Trustee's request for summary judgment that "[Defendant] holds no valid claim against the Debtor or Estate"[83] is denied.

The Court will next consider Trustee's request for summary judgment on her § 362(k) claim.

## C.  Willful Stay Violation Pursuant to 11 U.S.C. § 362(k)

Trustee asserts that Defendant committed a willful stay violation pursuant to § 362(k) by: (1) sending the Letter to the Trustee to cease and desist prosecution of the UMMC Adversary Proceeding, and (2) by asserting an invalid Security Interest in Debtor's assets despite the underlying Loans being paid off October 29, 2020.[84]

The Fifth Circuit has enumerated three elements to establish a stay violation pursuant to § 362(k): "(1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay."[85] "Section 362(k) does not require a specific intent to violate the automatic stay, only that the defendant's actions which violated the stay were intentional."[86] The Court will consider each in turn.

### 1.  Whether Defendant knew of the existence of the stay

Defendant has admitted and it is undisputed Defendant had actual knowledge of Debtor's pending Bankruptcy Case and that the automatic stay was in effect at the time Defendant sent the Letter to the Trustee and filed the Notice asserting the Security Interest in Debtor's assets.[87] Thus, there is no dispute of material fact and the Court finds that Defendant knew of the existence of the

---

[83] *Id.* at 16, ¶ 60.
[84] *Id.* at 17.
[85] *In re Small*, 486 F. App'x 436, 439 (5th Cir. 2012) (citing *Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 302 (5th Cir.2005).
[86] *Id.* (citing *id.*) (internal quotations omitted).
[87] ECF Nos. 1 at ¶ 42; 5 at ¶ 42.

stay when it sent the Letter to the Trustee and filed its Notice asserting a Security Interest in Debtor's Bankruptcy Case.

## 2.   **Whether Defendant's acts were intentional**

As stated *supra*, "[s]ection 362(k) does not require a specific intent to violate the automatic stay, only that the defendant's actions which violated the stay were intentional."[88] Here, Defendant has admitted and it is undisputed that on March 28, 2022, Defendant sent the Letter to the Trustee demanding that the Trustee cease and desist all actions in the UMMC Adversary Proceeding pending before this Court.[89] Defendant has also admitted and it is undisputed that On May 16, 2022, it filed its Notice purporting its Security Interest in Debtor's personal property.[90] Thus, there is no dispute of material fact and the Court concludes that Defendant's actions were intentional.

## 3.   **Whether Defendant's acts violated the stay**

Trustee asserts that both sending the Letter to the Trustee to cease and desist her prosecution of the UMMC Adversary Proceeding and filing the Notice asserting its Security Interest in assets of the estate constitute a violation of § 362(a)(3) and (4) respectively. In relevant part, § 362(a) provides:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;[91]

Property of the estate includes, "all legal or equitable interests of the debtor in property as of the commencement of the case."[92] Here, the Court both finds and the parties do not dispute that the

---

[88] *In re Small*, 486 F. App'x at 439.
[89] ECF Nos. 1 at ¶ 26; 5 at ¶ 26.
[90] ECF No. 19 at 4, ¶ 11. *See also* Bankr. ECF No. 76.
[91] 11 U.S.C. § 362(a).
[92] 11 U.S.C. § 541(a)(1).

claims asserted by the Trustee in the UMMC Adversary Proceeding and the personal property of the Debtor, as identified in Defendant's Notice, are both property of the estate.[93]

The Court will consider each of Trustee's asserted stay violations in turn.

### a. Sending the Letter

Since it is undisputed that Defendant sent the Letter to the Trustee to cease and desist her prosecution of the UMMC Adversary Proceeding, and that the claims asserted in the UMMC Adversary Proceeding are property of the estate, there is no dispute of material fact and Trustee is entitled to judgment as a matter of law. The Court concludes as a matter of law that Defendant sending the Letter to the Trustee constituted an act to exercise control over property of the estate in violation of § 362(a)(3).

### b. Filing the Notice and asserting a Security Interest in estate assets

The Court notes that Trustee devotes surprisingly little discussion or analysis with respect to whether Defendant's assertion of the existence of a pre-petition Security Interest in Debtor's personal property, by itself and without taking any other action, constitutes a violation of § 362(a)(4) as an act to create and enforce a lien against property of the estate.[94] Trustee asserts that:

> by filing the Notice and thereby asserting a claim... (i.e., a purported lien against Estate property) not otherwise supported by applicable law, RRL attempted to create and enforce a lien, in favor of itself, and against property of the Estate in violation of section 362(a)(4) of the Bankruptcy Code.[95]

Trustee's entire argument is largely conclusory and devoid of any citation to relevant authority. First, the Court notes that assertion of the mere existence of a valid, perfected, pre-petition security interest in estate property is not, by itself, a violation of § 362(a)(4). Thus, the operative inquiry is

---

[93] *Schertz-Cibolo-Universal City, ISD v. Wright*, 25 F.3d 1281, 1283–84 (5th Cir. 1994) (stating that "[t]he term 'all legal or equitable interests' has been defined broadly to include causes of action"). *See also* ECF No. 19.

[94] *See* ECF No. 19 at 16-19.

[95] ECF No. 19 at 17.

whether a subsequent finding that the Security Interest is invalid, as the Court has done here, retroactively makes Defendant's assertion of its Security Interest as an act to create and enforce a lien against estate property in contravention of § 362(a)(4).

The Court finds that absent evidence of bad faith and knowledge that Defendant's Security Interest was invalid when it was asserted, that it does not. Normally, the only requisite mental state required to show a willful stay violation is that the defendant intended to commit the act, not that they intended to violate the stay.[96] However, the issue here is that the act of merely asserting the existence of a pre-petition security interest, without taking any other action, does not violate the stay. Thus, the Court concludes that for this action to constitute a stay violation, additional evidence must be provided that the Security Interest was asserted in bad faith and with knowledge that the Security Interest was invalid. Otherwise, creditors who assert security interests in property of the estate in good faith might be subject to § 362(k) sanctions merely because of a subsequent judicial determination that the interest is invalid. For purposes of summary judgment, Trustee fails to cite evidence showing that the Notice and Security Interest were filed/asserted in bad faith. Thus, there is a dispute of material fact and Trustee is not entitled to judgment as a matter of law.

Accordingly, summary judgment is denied with respect to whether Defendant's assertion of its Security Interest in estate property constituted a stay violation under § 362(a)(4).

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[96] *In re Small*, 486 F. App'x at 439.

SIGNED September 7, 2023

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge